Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5711 | **DATE** | 3/18/2002 |
| **CASE TITLE** | Watchworks, Inc. vs. Total Time, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The Court grants defendant's motion to dismiss for lack of personal jurisdiction [#5-1]. The court denies defendant's motion to dismiss for improper venue and its alternative motion to transfer venue [#5-2] as moot. This case is dismissed without prejudice to filing in an appropriate district.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR date docketed 2002 | 14 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | 15 docketing deputy initials | |
| ✓ | Mail AO 450 form. Mailed by MD. | | | |
| | Copy to judge/magistrate judge. | | 3/18/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WATCHWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 01 C 5711  MAR 1 9 2002 |
| ) | |
| TOTAL TIME, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OF OPINION AND ORDER

Defendant Total Time, Inc. ("Total Time") moves to dismiss the complaint of plaintiff, Watchworks, Inc. ("Watchworks"), under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, and under Rule 12(b)(3) for improper venue. In the alternative, defendant moves under 28 U.S.C. § 1404 to transfer venue to the Central District of California. The complaint alleges that defendant is liable for trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1141(1), false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under California and Illinois common law, and Deceptive Trade Practices under 815 ILL. COMP. STAT. 510/1 *et seq.* and 505/1 *et seq.* and the CAL. BUS. & PROF. CODE § 17200. For the reasons set forth below, the court grants defendant's motion to dismiss on the basis that it lacks personal jurisdiction over Total Time.

In deciding a motion to dismiss for lack of personal jurisdiction, the court must take as true any jurisdictional allegations asserted by the plaintiff in the complaint; the defendant, however, may controvert these allegations with affidavits. *Turnock* v. *Cope*, 816 F.2d 332, 333

1

14

(7th Cir. 1987). The court must resolve any conflicts of fact in favor of the plaintiff. *John Walker & Sons, Ltd.* v. *DeMert & Doughtery, Inc. et al.*, 821 F.2d 399, 402 (7th Cir. 1987), citing *Deluxe Ice Cream Co.* v. *R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984).

## FACTS

Plaintiff is in the business of purchasing, repairing and selling fine watches. (Dec. of H. Terzian.) Since its formation as an Illinois corporation in 1978, plaintiff has had its principal place of business in the "world-renowned" Water Tower Place shopping mall located on Chicago's famous Magnificent Mile. (*Id.*) Each year, approximately 20 million shoppers visit Water Tower Place, and approximately 10 million of these shoppers are from outside Chicago. (*Id.*) Since its formation in 1978, plaintiff has used the mark "Watchworks" as a trademark in connection with its watch business and, throughout this time, plaintiff has continuously and extensively promoted the "Watchworks" mark in Illinois and throughout the United States. Plaintiff is also the owner of a federal trademark registration for "Watchworks" for use with watches (Reg. No. 1,493,033). (Pl. Resp. at p. 1.)

Defendant has been in the watch business since 1988 and operates eleven retail stores in Southern California with its sister corporation, Top Time, Inc. From 1988 through 1993, each of defendant's stores was marketed under the "Total Time" trademark. (Pl. Resp. at p. 3.) Six of its stores now operate under the name "Watch Works" and five of them operate under the name "Total Time." The stores sell watches, clocks, jewelry and other gift items, are located in various malls throughout southern California, and offer on-site repair services for various types of watches and clocks.

Defendant states that it first became aware of plaintiff on or about October 2000, when

2

plaintiff filed a request for extension of time to oppose a trademark application for the mark "Watch Works by Total Time," filed by Total Time. Plaintiff, to the contrary, states that sometime in 1993, one of the principals of defendant with the last name Tatoulian came into the Watchworks store at the Water Tower Place shopping mall.[1] Tatoulian spoke with Harout Terzian, the Manager of Watchworks. Tatoulian advised Terzian that he had a similar store in California under the name of "Total Time" and he asked to be shown around the Watchworks store. The next year, in February 1994, defendant began opening stores under the name "Watchworks." Since that time, Terzian alleges that he has had several more conversations with Tatoulian and other employees of defendant regarding the Watchworks store in Water Tower Place.

According to defendant, it does not and has never owned, operated, or had any affiliation or connection with any stores or businesses anywhere in Illinois. It is not now nor has it ever been incorporated in Illinois, manufactured any product in Illinois, had any business of any kind in Illinois, had an agent on whom service could be made in Illinois, solicited or advertised its products in Illinois, provided services of any kind in Illinois, maintained an office in Illinois, owned any real or personal property in Illinois, employed any employees or agents in Illinois, been required to or paid any taxes in Illinois, or performed any contracts or maintained any bank accounts in Illinois. In response, plaintiff points to defendant's catalog distribution and its website as the means by which defendant has established contacts within Illinois.

---

[1] Defendant represents that the only employees of defendant with the last name Tatoulian are Ishkhan Tatoulian, Ara Tatoulian, and John Asbed Tatoulian. Each of these individuals attests that he was not in Chicago in 1993 and was not aware of any watch stores in Illinois under the name "Watchworks" until plaintiff filed an opposition to defendant's trademark application. (See Def. Reply at p. 2.) Because the facts are in dispute, the court must accept plaintiff's version as true.

A potential client may receive a catalog of defendant's products in one of three ways: at one of defendant's eleven stores, in GQ magazine's West Coast distribution throughout southern California and southern Nevada, and at defendant's "watchworksonline.com" and "totaltimeonline.com" Internet website, which defendant owns and operates. As of August 20, 2001, defendant received 45 e-mail requests for a catalog and only one was from an Illinois addressee.[2] Defendant cannot sell products or otherwise transact business via its Internet website because it has sales agreements with many of its watch and clock suppliers which specifically prohibit it from doing so. Defendant advertises itself on its website as "Southern California's Premier Watch Experts."

Defendant's website publishes telephone numbers, including toll-free numbers, by which users can call defendant and purchase watches over the phone and have them shipped. Besides providing users with the opportunity to join its mailing list online or to become a "preferred customer," defendant provides users with an e-mail address inviting them to communicate with it regarding sales, services, corporate gifts, or submit questions or comments. Furthermore, defendant states on its website,

> Watchworks corporate gift specialists work with clients throughout the United States. To learn more about what a Watchworks Corporate Account can offer your company, please fill out the form below or call toll-free (866) 20WATCH

During its thirteen years in business, defendant shipped only two Swiss Army brand watches, each valued at $130, to the same individual in Illinois, who defendant later discovered was an investigator commissioned by plaintiff. The investigator was able to order and receive

---

[2]Defendant alleges that one additional request, which was made on July 23, 2001, was not fulfilled because it does not conduct business in Illinois. (Dec. of J.A. Tatoulian ¶ 8.)

4

two watches as well as a catalog using defendant's website and the toll-free number listed on the site. Nevertheless, the manager of defendant's Brea Mall store, which is named "Watchworks," represented to the investigator that defendant could ship watches anywhere in the United States and that she regularly sells and ships watches to customers in Chicago and the midwestern United States. Defendant, however, now has a policy against shipping anything into or through Illinois and has a policy to continue to abstain from doing business of any kind whatsoever with anyone or any company in Illinois. (Dec. of I. Tatoulian ¶ 32.)

## DISCUSSION

"The plaintiff bears the burden of demonstrating personal jurisdiction." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000), citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In order to meet this burden, the plaintiff must provide sufficient evidence to establish a prima facie case of personal jurisdiction. *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). In a federal question case, the court's assertion of personal jurisdiction must satisfy the due process requirements familiarly characterized as "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940),[3] and the defendant must be amenable to service of process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.* 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the

---

[3] In *International Shoe Co.*, the court applied the due process clause of the Fourteenth Amendment to a question whether defendant, a non-citizen of Washington, was within the personal jurisdiction of a Washington state court.

5

defendant and the forum. There also must be a basis for the defendant's amenability to service of summons.").

Amenability to service derives from Federal Rule of Civil Procedure 4(k)(1), which provides that service is effective to establish jurisdiction over the person of a defendant "(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or . . . (D) when authorized by a statute of the United States." The Lanham Act, which governs this trademark dispute, does not provide for nationwide service of process, *see* 15 U.S.C. § 1121; *McMaster-Carr Supply Co. v. Supply Depot, Inc.*, No. 98 C 1903, 1999 WL 417352, at *2 (N.D. Ill. June 16, 1999), so Total Time's amenability to service is governed by the Illinois long arm statute, 735 ILL. COMP. STAT. 5/2-209(a). *See LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N.D. Ill. 1999).

Illinois' long arm statute provides for jurisdiction over a defendant who performs enumerated acts in connection with tort or contract, and further allows the exercise of personal jurisdiction on "any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2-290(c).[4] Because the statute allows the exercise of personal jurisdiction to the constitutional limits, "the statutory analysis

---

[4] In considering whether personal jurisdiction comports not only with the federal Constitution but also the Illinois Constitution, defendant sets out that "[t]he Illinois constitution also requires the court to inquire whether it is 'fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" (See Mem. of Law in Support of Def. Total Time Inc.'s Mot. to Dismiss or in the Alternative to Transfer Venue at p. 6). This statement is from the Illinois Supreme Court's decision in *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990). In examining that statement made in *Rollins*, however, the court in *RAR, Inc.*, 107 F.3d at 1276, determined that "we have scant case law with which to work" as to interpreting that statement. Like the court in *RAR, Inc.*, this court will "move on to address the federal constitutional issues directly." *Id.* at 1277; *see Reimer Express World Corp.*, 230 F. 3d at 940; *but see Glass v. Kemper Corp.*, 930 F. Supp. 332, 340-42 (N.D. Ill. 1996) (court considered due process principles under the Illinois Constitution prior to the court's decision in *RAR, Inc.*, 170 F.3d at 1276.).

6

collapses into a due process inquiry, and [the courts] need not consider whether [the defendant] engaged in any of the acts enumerated under the long-arm statute." *E.g., LFG, LLC*, 78 F. Supp. 2d at 735, citing *Dehmlow v. Austin Fireworks*, 963 F. 2d 941, 945 (7th Cir. 1992)); *see RAR, Inc.*, 107 F.3d at 1276.

Under the due process clause of the Fourteenth Amendment,[5] the defendant is subject to personal jurisdiction when it has "certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *RAR, Inc.*, 107 F.3d at 1277, quoting *International Shoe Co.*, 326 U.S. at 316 (1940), (internal citations and quotations omitted). Defendant may be subject to personal jurisdiction either by way of general or specific jurisdiction. *E.g., id.*

---

[5]Some cases indicate that in a federal question case the Fifth Amendment due process clause applies and is satisfied if the defendant passes a threshold of "minimum contacts" with the United States, *e.g., McMaster-Carr Supply Co.*, 1999 WL 417352, at *2, citing to *United States v. de Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990), and then proceed to analyze whether under the Illinois long arm statute, the "minimum contacts" test of *International Shoe Co.*, a Fourteenth Amendment due process standard, is met. The Fifth Amendment language derives from cases involving personal jurisdiction over foreign nationals or foreign corporations, *e.g., United Rope Distrib. v. Seatriumpth Marine Corp.*, 930 F.2d 532, 535-36 (7th Cir. 1991), and has also been used in instances where Congress by statute has authorized nationwide service of process.

The court in *de Ortiz*, for example, cites *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987), and *Fitzsimmons v. Barton*, 589 F.2d 330, 332-35 (7th Cir. 1979), for the proposition that in federal question cases "due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or other geographic area," noting that *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.* 484 U.S. 97, 102 n.5 (1987), specifically did not decide that issue to the contrary. The courts in *Lisak* and *Fitzsimmons*, however, relied on a statutory provision for nationwide service of process in reaching their decisions rather than a doctrine that minimum contacts with the United States is all that due process requires in a federal question case. As explained in *Lisak*, 834 F.2d at 671, "Service of process is how a court gets jurisdiction over the person," and the court rejected an argument that a statute providing for nationwide service of process would violate due process if minimum contacts with the forum state were lacking. *De Ortiz* also determined that there was an implicit statutory basis for nationwide service of process. 910 F.2d at 382 (Title 21 U.S.C. § 853(*l*) "underscores the court's jurisdiction to enforce a forfeiture regardless of the location of the property and therefore, by implication, over persons who possess the property but reside outside the state or district in which the court is found.").

The Fifth Amendment due process test has no applicability to a case testing personal jurisdiction over a domestic entity or individual in a federal question case where Congress has not provided a statutory basis for nationwide service of process. *See L.H. Carbide Corp. v. Piece Maker Co.*, 852 F. Supp. 1425, 1431 (N.D. Ind. 1994) (The Fourteenth, not Fifth, Amendment must be applied in such circumstances.).

A.   **Whether defendant is subject to general jurisdiction**

The defendant is subject to general jurisdiction when it is either domiciled in the forum state, *see Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000), or "where the defendant has continuous and systematic general business contacts with the forum[,]" *RAR, Inc.*, 107 F.3d at 1277, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (internal quotations omitted). Plaintiff argues that defendant is subject to general jurisdiction based on its website, which states that it "work[s] with clients throughout the United States" under the name "Watchworks," and an admission by the manager of defendant's Brea Mall store that she regularly sells and ships watches to customers in Chicago and the midwestern United States. (Pl.'s Opp'n to Mot. to Dismiss or in the Alternative to Transfer Venue at p. 4.) In response, defendant relies on the court's decision in *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 833, in which the court held that it lacked general jurisdiction over the defendant, stating, "[T]he defendant's mere maintenance of an Internet website is not sufficient activity to exercise general jurisdiction over the defendant" even though the defendant made several sales through its website to Illinois residents and it had contacts with Illinois suppliers. (See Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss or in the Alternative to Transfer Venue at p. 3.)

The court agrees with defendant that plaintiff has failed to establish that defendant is subject to general jurisdiction. It is undisputed that defendant's stores are located in the southwest United States. Other than a mere visit by a principal of defendant to plaintiff's store at Water Tower Place, there is no indication that defendant has ever owned, operated, or had any affiliation or connection with any stores or businesses anywhere in Illinois. It is not now nor has

it ever been incorporated within Illinois, manufactured any product in Illinois, had an agent upon whom service could be made in Illinois, provided services of any kind in Illinois, maintained an office in Illinois, owned any real or personal property in Illinois, employed any employees or agents in Illinois, been required to or paid any taxes in Illinois, or maintained any bank accounts in Illinois. *See Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 910 (D. Or. 1999). There is no evidence from which a fair inference can be drawn that Total Time has continuous and systematic general business contacts within Illinois. *See id.*

**B.    Whether defendant is subject to specific jurisdiction**

In order to meet the specific jurisdiction requirements, the court applies the test articulated in *Reimer Express World Corp.*, 230 F.3d at 942-43, to

> ... (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums ... [(3)] whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; [and (4)] determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.

*See, e.g., Euromarket Designs, Inc.*, 96 F. Supp. 2d at 834.[6]

*1.    Whether defendant has contacts with the forum*

Again, plaintiff points to Total Time's Internet-related activities via a website registered

---

[6]Both parties rely on a different three step test applied by several district courts and the ninth circuit. This test provides that:

> 1) The defendant must have sufficient minimum contacts with the forum state, that is, he must do some act or consummate some transaction with the forum state, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; 2) The claim asserted must be one which arises out of or results from the defendant's forum related activities; and 3) the exercise of jurisdiction must be reasonable.

*E.g., Euromarket Designs, Inc.*, 96 F. Supp. 2d at 834. That three step test may be incorporated under the the test of *Reimer Express World Corp.*, 230 F.3d at 942-43, as that court took into account the same standards.

9

under the domain names "watchworksonline.com" and "totaltimeonline.com" in which an individual can obtain defendant's toll-free number and call defendant, order a catalog or one of its products and have it shipped to Illinois. Other alleged contacts include one of defendant's employees visiting plaintiff's store in 1993, coincidentally opening stores under the name Watchworks in 1994, defendant being aware of plaintiff's opposition to its application for a registered trademark in 2000, and a sale and shipment to plaintiff's investigator in Illinois.

2.  *Whether these contacts meet constitutional minimums*

In considering whether defendant's alleged contacts meet the constitutional minimum, the court will consider whether defendant has done "some act or consummate[d] some transaction with the forum state, or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws[.]" *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 834. In trademark infringement cases where part of the alleged wrongful conduct involves Internet activities, courts consider both the traditional "effects" analysis, as well as the more recently articulated "sliding scale" analysis. *See id.* at 835.

Under the sliding scale test, the court weighs the nature and quantity of the Internet activities in evaluating evidence of minimum contacts. *E.g. Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("[O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles."). Three categories of Internet activity have been described: whether the defendant

conducts business over the Internet through its active website, whether the defendant maintains an interactive website, or whether the defendant maintains a passive website without any interactive element. *E.g. School Stuff, Inc.* v. *Sch. Stuff, Inc.*, No. 00 C 5593, 2001 WL 558050, at *3 (N.D. Ill. May 21, 2001). Courts generally exercise jurisdiction where an active site exists and do not exercise jurisdiction for passive sites. *LFG, LLC*, 78 F. Supp. 2d at 736. With respect to interactive sites, the middle category, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website[,]" *id.*; *Zippo Mfg. Co.*, 952 F. Supp. at 1124, between the user and the host computer. *School Stuff Inc.*, 2001 WL 558050, at *3.

Despite defendant's initial assertion that its website is passive, plaintiff demonstrates that defendant's website is actually an interactive site by which users can send information to defendant's host computer. *See Martiz, Inc.* v. *Cybergold, Inc.*, 947 F. Supp. 1328, 1330 (E.D. Mo. 1996). The website provides users with the opportunity to join its mailing list or become a "preferred customer," and invites users to communicate with defendant regarding its sales, corporate gifts, and to submit questions or comments.[7] Plaintiff argues that the court has personal jurisdiction over a defendant whose website, like Total Time's, features only contact pages by which users could e-mail the defendant and join its mailing list, citing to several cases, principally *LFG, LLC*, 78 F. Supp. 2d at 737, *Publications International, Ltd.* v. *Burke/Triolo, Inc.*, 121 F. Supp. 2d 1178, 1182-83 (N.D. Ill. 2000), and *Martiz, Inc.*, 947 F. Supp. at 1330.

In response, defendant asserts that plaintiff fails to establish that it specifically targeted

---

[7] Plaintiff further adds that defendant has clients throughout the United States, which includes Illinois, but does not provide any evidence of a client except the purchases of two watches by an investigator.

11

Illinois residents, relying on *Transcraft Corp.* v. *Doonan Trailer Corp.*, 45 U.S.P.Q.2d 1097, 1100 (N.D. Ill. 1997) and *Trost* v. *Bauer*, No.01 C 2038, 2001 WL 845477, at *3 (N.D. Ill. July 24, 2001). In those cases, the courts found that the defendants were not subject to personal jurisdiction even though their websites were viewable and accessible in Illinois, provided residents of Illinois with toll-free numbers and addresses, provided sales information for the defendants' products and invited residents within Illinois to contact them via telephone or email.

The cited cases reflect that personal jurisdiction is typically determined based not only on a defendant's Internet activities but also on its non-Internet activities. *See, e.g., Publications Int'l, Ltd.*, 121 F. Supp. 2d at 1182-83. For example, in *Publications International, Ltd.*, the court held that the defendant was subject to personal jurisdiction where, similarly to the situation in *Martiz, Inc.*, it maintained a website in which Illinois users who access the site could complete a form request for a catalog and submit it directly to the defendant. As defendant points out, however, the court in *Publications International, Ltd.* further found that the defendant extensively distributed the infringing materials in Illinois.[8] Thus, as the court did in *McMaster-Carr Supply Co.*, 1999 WL 417352, at *3, this court will refer also to the "effects" analysis to determine whether defendant's contacts meet constitutional minimums.

Under the traditional effects doctrine test in trademark infringement cases, which sound

---

[8] As noted earlier, plaintiff also relies on *LFG, LLC*, 78 F. Supp. 2d at 737, and *Martiz, Inc.*, 947 F. Supp. at 1330. In *LFG, LLC*, 78 F. Supp. 2d at 736-37, the court weighed in favor of exercising personal jurisdiction, not only emphasizing that defendant's website was actually an Internet portal but also that 25 Illinois residents requested to be placed on defendant's mailing list. In *Maritz, Inc.*, 947 F. Supp. at 1330, 1333, the court had evidence that defendant was targeting plaintiff and Missouri because defendant's website had been accessed at least 311 times in Missouri, 131 times presumably by regular Missouri residents and 180 times by the plaintiff and its employees. Here, plaintiff provides evidence only of Terzian and its investigator accessing the website and no evidence of other Illinois residents accessing the website or requesting that it be placed on defendant's mailing list. Furthermore, as set forth in the text, the court examines the content of defendant's website and determines that defendant distinguishes itself as a Southern California retailer on its website.

in tort, *Bunn-O-Matic Corp. v. Bunn Coffee Serv. Inc.*, 46 U.S.P.Q.2d 1375, 1377 (C.D. Ill. 1998), the court considers whether "1) the defendant's intentional tortious actions 2) expressly aimed at the forum state 3) causes harm to the plaintiff in the forum state, of which the defendant knows is likely to be suffered." *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 835, citing *Calder v. Jones*, 465 U.S. 783 (1984). In *McMaster-Carr Supply Co.*, 1999 WL 417352, at *3, the court ruled (in part) that even though defendant maintained only a passive website under the same domain name as plaintiff's mark, the domain name and site in combination infringed. The court distinguished *Transcraft Corp.* on the facts, stating that the defendant "has not only just promoted the sale of an allegedly infringing product on-line; the on-line activity itself is the alleged infringement." Further, the court found that any additional "entry" requirement could be based on the defendant's intentional registration of the plaintiff's trademark, explaining,

> Supply Depot intentionally registered MCS's mark as its domain name, an act that it knew would harm Illinois-based MCS in Illinois, its principal place of business. The targeting of MCS in Illinois is the something more, the entrance into the forum, the act beyond just establishing the web site that makes it reasonable for Supply Depot to anticipate being haled into court in Illinois. Indeed, this fact makes *Cybersell* [v. *Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997)] distinguishable, and creates a strong resemblance between this case and *Panavision* [*International, L.P.* v. *Toeppen*, 141 F.3d 1316, 1312 (9th Cir. 1998)]. Just as in *Panavision,* here Defendant directed activity toward the forum state by its allegedly improper use on the Internet of a mark registered to a business in that state, which action harmed the business in the forum.

Similarly, in *Panavision International, L.P.*, 141 F.3d at 1322, the court held that defendant could not be subject to personal jurisdiction based only on defendant's registering plaintiff's trademark as a domain name and posting a website but also based on his engaging in a scheme to register the plaintiff's trademark for the purpose of extorting money from the plaintiff. The court specifically stated,

13

> We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. *Cybersell*, 130 F.3d at 418. As we said in *Cybersell*, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. *Id.* Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered. Under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

*Panavision Int'l*, 141 F.3d 1316, 1322 (9th Cir. 1998).

With regard to *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 836, in which the court held that Illinois had jurisdiction over a non-resident defendant whose website allegedly infringed the mark of Illinois-based retailer Crate & Barrel, the court also relied on the fact that defendant intentionally targeted the Illinois-based Crate & Barrel, where defendant was aware of the company, its decision to register the retailer's trademark as its domain name was aimed at the forum state, and the defendant should have known that the retailer could be injured in Illinois.[9] Furthermore, the court found that "[defendant] pursued and established vendors and suppliers in

---

[9] In arguing that the injury caused by defendant's infringement will be felt by plaintiff in its principal place of business, plaintiff also relies on *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411 (7th Cir. 1994), in which the court found that the defendant's broadcast of its football games in Indiana resulted in an injury that would be felt primarily in Indiana where the trademark owner's principal place of business was located. In disputing that the injury would not be felt in plaintiff's principal place of business, defendant relies on *Transcraft Corp.*, 45 U.S.P.Q.2d at 1100, in which the court intimated that the court in *Indianapolis Colts, Inc.* relied not only on the defendant's cable broadcast but also considered "the defendant's additional entrance [into the state] in the form of cable broadcasts."

Defendant fails to acknowledge that it knew about plaintiff's trademark as early as October 2000, when plaintiff filed a request for an extensive of time to oppose a trademark application for the mark "Watch Works by Total Time," filed by defendant. Furthermore, as the court is to credit the declaration of Terzian over those of the Tatoulians, defendant may have known of plaintiff as early as 1993. Either way, defendant was well aware that it may be infringing on plaintiff's mark approximately eight months before plaintiff initiated this present litigation. Based on the court's analysis under the sliding scale test, *see Bunn-O-Matic Corp.*, 46 U.S.P.Q.2d at 1377 ("[d]efendant's actions in setting up a website accessible to residents of [p]laintiff's home state would certainly meet this very low 'entry' threshold."), defendant should have known that its injury might be felt in Illinois, *see Euromarket Designs, Inc.*, 96 F. Supp. 2d at 836. On the other hand, plaintiff does not acknowledge that, under *Euromarket Designs, Inc.*, the court should engage in a more lengthy analysis as set forth above.

Illinois, some of which are also [plaintiff's] suppliers, and attended trade shows in Illinois designed to promote its business in Illinois and the United States, potentially causing confusion between [plaintiff] and [defendant] in the eyes of Illinois vendors suppliers, customers and businesses in Illinois." *Id.*

Plaintiff's facts are sparse in comparison to the facts considered by the courts in *Euromarket Designs, Inc., McMaster-Carr Supply Co.* and *Panavision International, L.P.* Unlike these courts, here the court cannot infer from the evidence before it that defendant was intentionally registering and targeting its website at Illinois or Watchworks based on the content of its website. Rather, an individual who accesses the website would learn that defendant directs its business at consumers within its purported market area of southern California.

Moreover, plaintiff relies considerably on its investigator accessing defendant's website and, using toll-free numbers to contact one of defendant's stores in California, purchasing two watches, which were subsequently shipped to the investigator in Illinois, and defendant's manager representing to the investigator that she regularly sells and ships watches to customers in Illinois. These facts, however, suggest the dilemma of manufactured jurisdiction addressed in *Millennium Enterprises, Inc.*, 33 F. Supp. 2d at 911. In *Millennium Enterprises, Inc.*, the defendants operated a music store in South Carolina and sold their products through their retail stores and Internet website. While defendants sold fifteen compact discs to nine separate customers in six states and one foreign country, totaling $225, they sold only one of those compact discs to a customer in Oregon. That customer was requested by an attorney associated with the plaintiff to purchase a compact disc from the defendants. The court held that the defendants could not have purposefully availed themselves of the protections of Oregon "when it

15

was an act of someone associated with plaintiff, rather than defendants' product into this forum."[10] *Id.*

This court agrees. Despite the manager's representations that she sells and ships to Illinois and defendant's representations on its website that its corporate specialists work with clients throughout the United States, there simply is no hard evidence that in fact defendant has done business in Illinois. Plaintiff has not controverted defendant's representations that other than its Internet website and its stores, its catalogs are available only in GQ Magazine's distribution for southern California and southern Nevada and that throughout its 13-year history, it has only shipped two watches to Illinois (to the investigator). Further, the manager attests that the sale representative who originally answered the investigator's phone call gave that call to the manager because "it was the first time that we had ever received a call from someone outside of California asking to purchase something." (Dec. of A. Gomez ¶ 5.) The evidence before the court is persuasive that defendant is a corporation that owns and operates "brick & mortar" shops and its website is designed to provide information to its customers within its limited market area. (Dec. of I. Tatoulian ¶ 29). Because plaintiff fails to meet its burden that defendant's contacts meet the minimum contacts necessary to guarantee due process to defendant, the court finds that it lacks jurisdiction over defendant.[11]

---

[10]The court further concluded that, as the case was one of trademark infringement, the plaintiff could "hardly argue that such action 'caused a likelihood of confusion' regarding plaintiff's and defendants' trade names; [the customer] knew exactly with whom she was dealing and knew that defendants were not associated in any way with plaintiff." *Millennium Enter., Inc.*, 33 F. Supp. 2d at 911.

[11]As a footnote on the last page of plaintiff's brief, Watchworks asks should the court conclude that it lacks jurisdiction over the defendant, that the court grant it leave to take discovery of facts relevant to jurisdiction. The court denies this request as untimely. Although the court will normally grant discovery of such matters, it is not willing to spend the hours necessary to full and fair consideration of the motion only to find a buried request for discovery when it should have been obvious to plaintiff that discovery might have been needed in order to carry its burden of proof.

## C. Defendant's motion to dismiss for improper venue and alternative motion to transfer venue

Defendant further moves this court to dismiss plaintiff's complaint based on improper venue under 28 U.S.C. § 1406(a), or, in the alternative, requests that should the court decide that it has jurisdiction over it, that the court transfer venue to the Central District of California under the provisions of 28 U.S.C. § 1404. Although it is plain enough that a California court would have jurisdiction over defendant, plaintiff has not urged the court to transfer venue should it not prevail on the jurisdictional issue. *See Goldlawr, Inc.* v. *Heiman*, 369 U.S. 463, 466-67 (1962) (Even though defendant is not subject to personal jurisdiction and venue is improper, the court may consider whether the transfer of venue to another district is in the interest of justice under 28 U.S.C. § 1406(a)). Thus, it is not clear that plaintiff wishes to litigate in a distant forum, or that California is the only possible forum for plaintiff to pursue the litigation. For these reasons, the court will not consider whether venue is proper or whether to transfer venue.

## ORDER

Wherefore, and for the reasons stated above, this court grants defendant's motion to dismiss for lack of personal jurisdiction [#5-1]. The court denies defendant's motion to dismiss for improper venue and its alternative motion to transfer venue [#5-2] as moot. This case is dismissed without prejudice to filing in an appropriate district.

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 18, 2002